Justice Stevens,
dissenting.
In 1982, petitioner Humberto Fernandez-Vargas, an alien who had previously been deported, reentered the United States illegally. Over the next 20 years, petitioner remained here. He worked as a truckdriver, owned a trucking business, fathered a child, and eventually married the child’s mother, a United States citizen. The laws in place at the time of petitioner’s entry and for the first 15 years of his residence in this country would have rewarded this behavior, allowing him to seek discretionary relief from deportation on the basis of his continued presence in and strong ties to the United States. See 8 U. S. C. § 1254(a)(1) (1994 ed.).
In 1996, however, Congress passed a new version of the applicable provision eliminating almost entirely the possibility of relief from deportation for aliens who reenter the coun *48 try illegally having previously been deported. See Illegal Immigration Reform and Immigration Responsibility Act (IIRIRA or Act), § 305(a)(3), 110 Stat. 3009-599, 8 U. S. C. § 1231(a)(5) (2000 ed.); see also ante, at 35, n. 4. The 1996 provision is silent as to whether it was intended to apply retroactively to conduct that predated its enactment.[1] Despite a historical practice supporting petitioner’s reading, and despite the harsh consequences that attend its application to thousands of individuals who, like petitioner, entered the country illegally before 1997, the Court not only holds that the statute applies to preenactment reentries but also that it has no retroactive effect. I disagree with both of these conclusions.
I
In 1950, when Congress first gave the Attorney General the authority to reinstate an order of deportation, it enacted a reinstatement provision containing no explicit temporal reach.[2] See Internal Security Act, § 23(d), 64 Stat. 1012, 8 U. S. C. § 156(d) (1946 ed., Supp. V). The natural reading of this provision, the one most consistent with the “deeply rooted” traditional presumption against retroactivity, Landgraf v. USI Film Products, 511 U. S. 244, 265 (1994), is that it would apply to deportations that occurred before the provision’s enactment but not to preenactment reentries. While both deportation and reentry can constitute “events completed before [the provision’s] enactment,” id., at 270, an *49 alien’s reentry is the act that triggers the provision’s operation and is therefore the act to which the provision attaches legal consequences.
When the Immigration and Naturalization Service (INS) promulgated regulations implementing the 1950 statute, however, it did not read the statute so naturally. Instead, the INS’ regulations, embodying an overly strong version of the presumption against retroactivity, provided that an order of deportation could only be reinstated if that deportation occurred after the statute’s enactment date. See 8 CFR §152.5 (1950 Cum. Supp.). Thus, the INS read the reinstatement provision as inapplicable even to reentries that occurred after the statute’s enactment date if the underlying deportation had been entered before that date; it follows a fortiori that the provision was considered inapplicable to reentries that occurred before the statute’s enactment.
Congress corrected the INS’ error two years later by adding the clause “whether before or after the date of enactment of this Act.” Immigration and Nationality Act, § 242(f), 66 Stat. 212, 8 U. S. C. § 1252(f) (1994 ed.); see also ante, at 33-34, and nn. 2-3. As the Court correctly notes, that amendment “most naturally referred not to the illegal reentry but to the alien’s previous deportation or departure.” Ante, at 39. The best interpretation of Congress’ intent with regard to the 1952 statute, then, was that it meant to apply the reinstatement provision to preenactment deportations but to preserve the status quo with regard to preenactment reentries: In accordance with the traditional presumption against retroactivity, preenactment reentries would remain uncovered by the reinstatement provision.
In 1996, when Congress enacted the current reinstatement provision, it drafted a version of the statute that, like its 1950 predecessor, was silent as to its temporal reach. See 8 U. S. C. § 1231(a)(5) (2000 ed.). If we assume (as the Court does) that the addition of the “before-or-after” clause in the 1952 statute merely clarified Congress’ original intent in *50 1950 to make the provision applicable to preenactment departures without authorizing any application to preenactment reentries, it is reasonable to attribute precisely the same intent to the Congress that enacted the 1996 statute: As in the 1950 and 1952 versions of the provision, Congress intended the 1996 reinstatement provision to apply to preenactment deportations but not to preenactment reentries.
In sum, our normal rules of construction support the reasonable presumption that Congress intended the provision to cover only postenactment reentries. Accordingly, the 1996 reinstatement provision should not be construed to apply to petitioner’s earlier entry into the United States.
II
The Court not only fails to give the 1996 Act its most normal interpretation, but also erroneously concludes that the provision does not have any retroactive effect. The Court reaches this conclusion based on its judgment that the provision applies not to conduct that occurred before the statute’s enactment date, but rather to “an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country.” Ante, at 44. This reasoning is unpersuasive.
It is true, of course, that the order of deportation entered against petitioner in 1981 could not be reinstated unless he was present in the United States, and that, until he was arrested in 2003, petitioner could have chosen to leave the United States. But it is precisely petitioner’s “continuing violation” that allowed him to be eligible for relief from deportation in the first place: He was required to have been physically present in the United States for a period of not less than seven years, to have been a person of good moral character during that time, and to have developed ties to the United States such that his deportation would result in extreme hardship to himself or to his United States citizen *51 wife or child.[3] See 8 U. S. C. § 1254(a)(1) (1994 ed.); see also INS v. Phinpathya, 464 U. S. 183 (1984) (strictly construing physical presence requirement). Moreover, under the pre1996 version of the reinstatement provision, the longer petitioner remained in the United States the more likely he was to be granted relief from deportation. See Matter of Ige, 20 I. & N. Dec. 880, 882 (1994) (listing factors considered in evaluating extreme hardship requirement, including alien’s length of residence in United States, family in United States, business or occupation, and position in community).
Given these incentives, petitioner legitimately complains that the Government has changed the rules midgame. At the time of his entry, and for the next 15 years, it inured to petitioner’s benefit for him to remain in the United States continuously, to build a business, and to start a family. After April 1, 1997, the date on which the applicable reinstatement provision became effective, all of these activities were rendered irrelevant in the eyes of the law. Only the Court’s unfortunately formalistic search for a single “past act that [petitioner] is helpless to undo,” ante, at 44, allows it to conclude that the provision at issue has no retroactive effect.[4] For regardless of whether his 1982 reentry was or *52 was not an act that he could now “undo,” it is certainly an act to which the 1996 reinstatement provision has attached serious adverse consequences. Because the provision has an undeniably harsh retroactive effect, “absent a clear indication from Congress that it intended such a result,” INS v. St Cyr, 533 U. S. 289, 316 (2001), we should apply the presumption against retroactivity and hold that the 1996 reinstatement provision does not apply to petitioner.
Accordingly, I respectfully dissent.

 The statutory provisions expanding the class of people to whom criminal penalties for illegal reentry might apply, however, explicitly apply only to postenactment reentries. See IIRIRA, § 324(c), 110 Stat. 3009-629, note following 8 U. S. C. § 1326.

 The provision stated:
“Should any alien subject to the provisions of subsection (c) unlawfully return to the United States after having been released for departure or deported pursuant to this section, the previous warrant of deportation against him shall be considered as reinstated from its original date of issuance.” 64 Stat. 1012, codified as 8 U. S. C. § 156(d) (1946 ed., Supp. V).

 Although petitioner became eligible for relief from deportation after being physically present in the United States for seven years, he could not apply for that relief until the Government placed him in deportation proceedings, at which point he could raise his eligibility as an affirmative defense. Cf. Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U. S. 939, 951-952 (1997) (applying presumption against retroactivity to statute eliminating affirmative defense).

 Even on its own terms the Court’s logic is troubling. The Court believes that petitioner could have avoided being affected by the 1996 reinstatement provision, not just retroactively but in any way whatsoever, by leaving the country prior to its effective date—a date that occurred six months after the statute’s enactment date not to give aliens “ample warning,” ante, at 43, 45, but instead to allow the Attorney General to prepare for the substantial changes caused by the IIRIRA and to promulgate regulations to effectuate that Act. See §309, 110 Stat. 3009-625. But had *52 petitioner “take[n] advantage of the statutory warning,” ante, at 46, he would have imposed upon himself the very same punishment—the guarantee of removal to Mexico—that he hopes to avoid. Just as we would not say that a defendant may avoid the retroactive application of a criminal statute by locking himself up for 10 years, it cannot be that petitioner’s ability to leave the country of his own accord somehow helps to prove that the provision at issue has no retroactive effect.